## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

NADIA ALQUAHWAGI,

        Plaintiff,

v.                                       Case No. 14-13691

SHELBY ENTERPRISES, INC., and THE
PRUDENTIAL INSURANCE COMPANY OF
AMERICA,

        Defendants.

_____/

### OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Now before the court are the parties' cross-motions for summary judgment. (Dkt. ## 32, 33, 35.) The motions are fully briefed, and the court finds that a hearing is unnecessary. *See* E.D. LR 7.1(f)(2). For the reasons discussed below, the court will deny Plaintiff's motion and grant both Defendants' motions.

## I. BACKGROUND

The following facts are undisputed. Plaintiff's late husband Muhammad Khairi was a full-time hourly employee of Defendant Shelby Enterprises, Inc. ("Shelby") from November 9, 2009 until his death on April 23, 2011. (Dkt. # 31, Pg. ID 269, 278.) Shelby made a variety of benefits available to employees, including group life, health, dental, and disability insurance. (*Id.* at Pg. ID 267.) Employees were eligible for plan benefits upon completion of their first 90 days of employment. (*Id.*) "Late entrants" who did not sign up for benefits when they are first eligible were allowed to do so during an annual Open Enrollment Period. (*Id.* at Pg. ID 294.)

Khairi did not sign up for benefits when he first became eligible in February of 2010. (*Id.* at Pg. ID 267.) During the March 2011 Open Enrollment Period, Khairi elected to sign up for various policies, including the optional group term life insurance underwritten by Defendant The Prudential Insurance Company of America ("Prudential") at issue. (*Id.*) For that policy, Khairi sought $50,000 in coverage for himself, and named Plaintiff as beneficiary. (*Id.* at Pg. ID 267.) The policy was "contributory," meaning Khairi was required to pay the full amount of the premium himself. *(Id.)* Khairi also sought coverage for Plaintiff and another dependent. (*Id.*)

Khairi completed and signed the Benefit Election Form on March 28, 2011. (*Id.* at Pg. ID 267.) In the voluntary life insurance section, the form provides "*Guaranteed issue amount - $150,000." A note at the end of the voluntary life insurance section, on the same page, states "*Guaranteed issue amounts are for new hires only. Any employee electing after their original eligibility date or increasing amounts[] will need to complete an Evidence of Insurability form." (*Id.*)

Khairi filled out and signed the Optional Term Life Insurance & Dependent Term Life Insurance Enrollment Form (the "Enrollment Form") the same day. (*Id.* at Pg. ID 271.) Under "Step 1," directly above the check boxes for selecting the amount of coverage, the form states:

> **Select Optional Term Life Insurance:** Purchase coverage amounts in increments of $10,000 to $500,000, not to exceed 5 times your covered annual earnings. During the enrollment period, amounts of insurance over $150,000[] require evidence of insurability satisfactory to Prudential . . . Late Entrants are required to provide evidence of insurability satisfactory to Prudential to enroll in all coverage amounts.

(*Id.* at Pg. ID 269.) Above the signature line, Khairi checked the box indicating

acceptance of coverage. (*Id.* at Pg. ID 271.) Text next to that box stated:

> . . . I understand that, if I desire to increase the amount of my insurance or
> my dependent insurance coverage hereafter, I may be required to furnish
> evidence of good health satisfactory to Prudential for myself and/or my
> dependant.

(*Id.*) The Shelby Enterprises Employee Plan Booklet (the "Booklet") sets out plan

details. (*Id.* at Pg. ID 195-227.) The Booklet, under the Optional Employee Term Life

Coverage heading, has a bolded section heading reading "Non-medical limit on Amount

of Insurance." (Dkt. # 31-1, Pg. ID 195.) The section provides:

> There is a limit on the amount for which you may be insured without
> submitting evidence of insurability. This is called the Non-medical Limit.
> If the amount of insurance for your Class and age at any time is more than
> the Non-medical Limit, you must give evidence of insurability satisfactory
> to Prudential before the part over the Limit can become effective. . . .
>
> Non-medical Limit: $150,000 . . . .

(*Id.*) The Booklet also has a "When You Become Insured" section. (*Id.* at Pg. ID 200-

02.) Under the "For Employee Insurance" heading, the Booklet states, "Your Employee

Insurance under a Coverage will begin the first day on which . . . [y]ou have met any

evidence requirement for Employee Insurance . . . ." (*Id.* at Pg. ID 200.) Later in that

section, the Booklet provides:

> **When evidence is required:** In any of these situations, you must give
> evidence of insurability. This requirement will be met when Prudential
> decides the evidence is satisfactory.
>
> (1) For Contributory Insurance, you enroll more than 31 days after you
> could first be covered. . . .

(*Id.* at Pg. ID 201 (emphasis in original).)

To provide information to Prudential regarding evidence of insurability, Khairi completed, signed, and submitted the Short Form Health Statement Questionnaire (the "Short Form EOI") on April 19, 2011. (*Id.* at Pg. ID 275.) Khairi marked "Yes" to the following question about prior health conditions:

> Within the last five years, have you been treated for or had any trouble with any of the following: heart; chest pain; high blood pressure; cancer or tumors; diabetes; lungs; kidneys; liver; alcoholism; mental or nervous disorder or have you been diagnosed with or treated by a member of the medical profession for Acquired Immune Deficiency Syndrome (AIDS) or AIDS-Related Complex (ARC)?

(*Id.*) Below the questions, in bold-face print, the Short Form EOI stated: "Prudential reserves the right to request additional health information on the basis of the response given to the above questions." (*Id.*) Immediately above the signature line, the form stated ". . . I agree that the coverage applied for is subject to the terms of the plan and shall become effective on the date or dates as established by the plan, provided the evidence of good health is satisfactory." (*Id.*) (emphasis added). Four days after completing the Short Form EOI, Khairi died from heart failure. (*Id.* at 278.)

Prudential, unaware of Khairi's passing, determined that additional health information was needed and, on May 6, 2011 sent Khairi a longer "Evidence of Insurability" Form with instructions to complete and return it within 45 days. (*See id.* at Pg. ID 280-286.) After receiving no reply, Prudential sent follow-up letters on July 4 and September 16 stating that Khairi's application was closed for failing to respond. (*Id.* at Pg. ID 288-90.) Only after sending the September 16, 2011 letter did Prudential learn that Khairi had died five months earlier.

4

Shelby, apparently unaware that Khairi's application had not yet been approved, began deducting $9.48 in premiums from Khairi's paycheck and did so for the next four weeks. (*Id.* at Pg. ID 401.) On May 4, 2011 Shelby refunded the $37.92 in mistaken payroll deductions to Plaintiff, Khairi's widow. (*Id.* at Pg. ID 403.)

On October 5, 2011 Plaintiff brought an action in Macomb County Circuit Court against Shelby and Prudential claiming breach of contract and negligence. (*Id.* at Pg. ID 298.) Defendants removed the action to the Eastern District of Michigan. The Honorable Gerald E. Rosen remanded the action to Prudential as claims administrator, and administratively closed the case on April 19, 2013. (*Id.* at Pg. ID 312.)

Ultimately, Prudential determined that Plaintiff was entitled to a death benefit of $16,000 under the Basic Employee Term Life Coverage that all Shelby employees receive. (*Id.* at Pg. ID 136, 399.) Prudential denied Plaintiff's claim for the $50,000 benefit from the optional term life coverage. (*Id.*) In an August 17, 2013 letter, Prudential explained its rationale as follows:

> Based on the information received, it is our understanding that Mohammad Khairi began working at Shelby Enterprises, Inc. on November 2, 2009. Mr. Khairi did not elect optional life insurance until March 28, 2011. Under Group Policy G-50372, medical evidence is required if "For contributory coverage, you enroll more than 31 days after you could first be covered." In addition to the terms of the Group Certificate, the form Mr. Khairi filled out provides a Guaranteed Issue amount of $150,000 for optional insurance, provided that, "Guarantee issue amounts are for new hires only. Any employee electing after their original eligibility dates or increasing amounts, will need to complete an Evidence of Insurability form." Since Mr. Khairi applied for optional coverage almost one and a half years after his initial employment, any election of coverage required Evidence of Insurability (EOI) which must be obtained and approved for the additional coverage to become effective.
>
> According to our records, Mr. Khairi filled out a Short Form EOI on April 19, 2011 which was forwarded to Prudential on May 3, 2011. Based on

5

> the responses to questions on the Short Form, a Long Form EOI was
> required. On May 6, 2011 a Long Form EOI was mailed. As Mr. Khairi had
> already passed away on April 23, 2011 and Prudential never received a
> response to the Long Form EOI, the coverage never became effective. As
> a result we must decline payment of the optional coverage for this claim.

(*Id.* at Pg. ID 372.) After Prudential denied Plaintiff's administrative appeals, she filed

the instant action challenging Prudential's decision and seeking attorneys' fees under

the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. §§ 1132(a)(1)(B),

1132(g). The parties have each filed a Motion for Judgment under Fed. R. Civ. P. 56.

## II. STANDARD

The parties have stipulated that the arbitrary and capricious standard governs the

review of Prudential's decision as claim administrator. (Dkt. # 30.) When reviewing an

ERISA administrative decision, the court is limited to the administrative record.

*McCartha v. Nat'l City Corp.*, 419 F.3d 437, 441 (6th Cir.2005) (citation omitted); *see

also Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 660 (6th Cir. 2004). "If the

administrative record . . . can support a 'reasoned explanation' for [the claim

administrator's] decision, the decision is not arbitrary [and] capricious." *Moon v. Unum

Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005). In other words, "the administrator's

decision must be affirmed if 'it is the result of a deliberate, principled reasoning process

and if it is supported by substantial evidence.'" *Whitaker v. Hartford Life and Acc. Ins.

Co.*, 404 F.3d 947, 949 (6th Cir. 2005) (quoting *Baker v. United Mine Workers of Am.

Health and Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir.1991)).

## III. DISCUSSION

Plaintiff advances two potential grounds for a judgment that Khairi was insured.

First, that the Plan provides automatic coverage for the amount of insurance Khairi

6

sought, or, at least, that the plan language is ambiguous with respect to whether the
plan guaranteed coverage or required evidence of insurability and insurer approval.
(Dkt. # 32, Pg. ID 409-12.) Because this ambiguity must be construed in favor of the
insured, Plaintiff argues, Khairi was guaranteed coverage and, therefore, was covered
at the time of his death. (*Id.*) Second, that Defendants are equitably estopped from
denying that Plaintiff is entitled to benefits. (*Id.* at Pg. ID 412.) In addition, Plaintiff
argues that she is entitled to reasonable attorneys' fees under 29 U.S.C. § 1132(g).
(Dkt. # 32, Pg. ID 414.)  Defendants respond that the plan unambiguously does not
cover Khairi, that equitable estoppel does not apply, and that a fee award would be
inappropriate.

### 1. Coverage Under the Plan Language

Plaintiff argues that the plan language either plainly guarantees coverage for the
amount of coverage Khairi sought or is ambiguous and, therefore, must be construed
against the drafter under the principle of *contra proferentum*. (Dkt. # 36, Pg. ID 523.) In
support, Plaintiff relies on *Gaines*, in which the Central District of California defines
*contra proferentum* as "the principle that ambiguities are strictly construed in favor of the
insured." *Gaines v. Sargent Fletcher, Inc. Grp. Life Ins. Plan*, 329 F. Supp.2d 1198,
1216 (C.D. Cal. 2004) (citing *Mongeluzo v. Baxter Travenol Long Term Disability Benefit
Plan,* 46 F.3d 938, 942 (9th Cir. 1995)).

The Sixth Circuit has not settled the question of how *contra proferentum* affects
the application of the arbitrary and capricious standard, if it applies at all. *See Mitchell v.
Dialysis Clinic, Inc.*, 18 Fed. Appx. 349, 353-54 (6th Cir. 2001) (questioning whether
cases purported to have established *contra proferentum* in the Sixth Circuit actually did

so). Plaintiff has not provided, and the court has been unable to find, any cases

applying both *contra proferentum* and the arbitrary and capricious standard. Even

*Gaines* applies *contra proferentum* only in the context of *de novo* review. 329 F.

Supp.2d at 1215. The Tenth Circuit has succinctly explained the issue:

> The federal common law of ERISA does provide that ambiguous terms in
> benefit plans should be construed in favor of beneficiaries. *Phillips v.
> Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302, 311 (7th Cir.1992). But this rule
> has no application here. Often called the rule of *contra proferentem*, it is a
> device for determining the intended meaning of a contract term in the
> absence of conclusive evidence about intent. *See Winters v. Costco
> Wholesale Corp.*, 49 F.3d 550, 554 (9th Cir.1995). Courts invoke this rule
> when they have the authority to construe the terms of a plan, but this
> authority arises only when the administrators of the plan lack the
> discretion to construe it themselves. *See Firestone*, 489 U.S. at 110-15,
> 109 S.Ct. at 954-57. Therefore, it is only used when courts undertake a *de
> novo* review of plan interpretations. *See Phillips*, 978 F.2d at 311-12; see
> also *Winters*, 49 F.3d at 554. When the administrators of a plan have
> discretionary authority to construe the plan, they have the discretion to
> determine the intended meaning of the plan's terms. In making a
> deferential review of such determinations, courts have no occasion to
> employ the rule of *contra proferentem*. Deferential review does not involve
> a construction of the terms of the plan; it involves a more abstract inquiry -
> the construction of someone else's construction. Because this case
> engages us in this more abstract exercise, we will not apply the rule.

*Morton v. Smith*, 91 F.3d 867, 871 n.1 (6th Cir. 1996). Lower courts in the Sixth Circuit

have reached the same conclusion. *See, e.g.*, *Peach v. Ultramar Diamond Shamrock*,

229 F. Supp. 2d 759, 766 (E.D. Mich. 2002) ("This Court likewise concludes that *contra

proferentem* is not a rule of construction that is applicable to ERISA plans which are

reviewed under an arbitrary and capricious standard . . . .") (citing *Morton*, 91 F.3d at

871 n.1), *aff'd*, 109 F. App'x 711 (6th Cir. 2004); *Nagengast v. Crowe, Chizek, and Co.,

LLP Grp. Long Term Disability Ins. Plan*, 2006 WL 958575, at *5 (W.D. Mich. April 10,

2006) ("[T]he Sixth Circuit seems poised to join the Second Circuit's determination that

8

'the rule of *contra proferentum* is limited to those occasions in which [the court] reviews an ERISA plan *de novo.*'") (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 443 (2nd Cir. 1995)). *See also Parker Hannifin Corp. Grp. Ins. Plan v. Titan Ins. Co.*, 2007 WL 517094, at *6 (Mich. Ct. App. Feb. 20, 2007) ("[T]he rule of *contra proferentem* is inapplicable to ERISA plans where the standard of review is arbitrary and capricious.") This court agrees, and declines to apply *contra proferentum* here.

In any event, *contra proferentum* would apply only if the plan language is ambiguous. *Osborne v. Hartford Life and Acc. Ins. Co.*, 465 F.3d 296, 300 (6th Cir. 2006) (explaining that "[e]ven if the doctrine of *contra proferentum* applies in interpreting ERISA plans, the doctrine does not apply" absent ambiguity). The Sixth Circuit has emphasized that courts will "not artificially create ambiguity where none exists." *Lake v. Metropolitan Life Ins. Co.,* 73 F.3d 1372, 1379 (6th Cir. 1996) (citing *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir. 1990.) For the reasons that follow, the court will find the that the plan language is unambiguous and that Khairi was uninsured.

Plaintiff argues that, under the Booklet's language, "an insured does not have to submit evidence of insurability if the amount of insurance is below the Non-medical Limit." (Dkt. # 32, Pg. ID 411 (citing Dkt. #31, pg. ID 195.) Defendant appears to refer to the following language:

> There is a limit on the amount for which you may be insured without submitting evidence of insurability. This is called the Non-medical Limit. If the amount of insurance for your Class and age at any time is more than the Non-medical Limit, you must give evidence of insurability satisfactory to Prudential before the part over the Limit can become effective.

(Dkt. # 31, Pg. ID 195.) Plaintiff argues that this language "clearly provides that an insured does not have to submit evidence of insurability if the amount of insurance is below the Non-medical Limit." (Dkt. # 31, Pg. ID 409.)

Plaintiff appears to be confusing necessary and sufficient conditions. Electing an amount of insurance above the Non-medical Limit is sufficient to trigger the requirement for evidence of insurability, but is not necessary. Put another way, the Non-medical Limit sets an upper bound on the amount of insurance one can take out under the Plan before *automatically* being required to submit evidence of insurability.

Plaintiff also argues that the Enrollment Form provides that the prospective insured "**may** be required to furnish evidence of good health satisfactory to Prudential for myself and/or my dependent." (Dkt. # 36, Pg. ID 524 (quoting Dkt. # 31, Pg. ID 271) (emphasis added by Plaintiff).) Plaintiff argues that, between this language and the booklet's section on Non-medical Limits, "a reasonable person . . . would be [led] to understand that Shelby and Prudential do not require further evidence of insurability but only may require it." (*Id.*) This, Plaintiff argues, conflicts with the "Late Entrant" language in the Election Form[1] and in the "When evidence is required" paragraph later in the booklet[2] that affirmatively require evidence of insurability for late entrants like Khairi. (*Id.*)

---

[1] "*Guaranteed issue amounts are for new hires only. Any employee electing after their original eligibility date or increasing amounts[] will need to complete an Evidence of Insurability form." (Dkt. # 31, Pg. ID 267.)

[2] "**When evidence is required:** In any of these situations, you must give evidence of insurability. This requirement will be met when Prudential decides the evidence is satisfactory. (1) For Contributory Insurance, you enroll more than 31 days after you could first be covered." (*Id.* at Pg. ID 201 (emphasis in original).)

10

It is not obvious to the court that the Election Form, the Enrollment Form, or the Short Form EOI are "plan documents" or "summary plan descriptions" that would govern the terms here. *See Morrison v. Marsh & McLennan Companies, Inc.*, 326 F. Supp.2d 833, 839 (E.D. Mich. July 20, 2004) (Feikens, J.) ("Both main plan documents and [summary plan descriptions] govern the rights and obligations of employees and employers under ERISA plans.") (treating a "Benefits Overview Handbook" as a summary plan description) (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 402 (6th Cir. 1998)). Neither party raises the issue, so the court will assume that all these documents, construed as a whole, govern the plan terms. *Id.*

Plaintiff's argument requires one to divorce the Enrollment Form quote from its context. A more inclusive version reads as follows:

> . . . I understand that, if I desire to increase the amount of my insurance or my dependent insurance coverage hereafter, I may be required to furnish evidence of good health satisfactory to Prudential for myself and/or my dependant.

(Dkt. # 31, Pg. ID 271.) Plaintiff's quote is an acknowledgment that future desired increases in insurance coverage could trigger the evidence of insurability requirement. It is not relevant to whether Khairi was required to provide further evidence of insurability to secure the $50,000 coverage Khairi sought at the time, and would not introduce ambiguity to a reasonable person. The other three provisions do not conflict at all: all late entrants must submit evidence of insurability, as must anyone seeking an amount of insurance above the Non-medical Limit.

Plaintiff then argues that "one would be confused if the evidence of insurability would have to be satisfactory to Prudential or not[,] as [the Booklet] requires Prudential

11

to be satisfied and [the Election Form] is silent as to Prudential being satisfied. (Dkt. #
36, Pg. ID 524.) Plaintiff neglects to mention that the Enrollment Form also includes a
"satisfaction" requirement, stating: "Late Entrants are required to provide evidence of
insurability *satisfactory to Prudential* to enroll in all coverage amounts." (Dkt. # 31, Pg.
ID 269 (emphasis added).) More to the point, the Election Form expressly directs late
entrants that they will need to complete the Short Form EOI. (*Id.* at Pg. ID 267.) That
form, in turn, stated above the signature line, ". . . I agree that the coverage applied for
is subject to the terms of the plan and shall become effective on the date or dates as
established by the plan, provided the evidence of good health is satisfactory." *Id.* at Pg.
ID 275.)

While the Election Form is silent as to the satisfaction requirement, every other
relevant form expressly conditions coverage on Prudential's satisfaction, including the
Short Form EOI that the Election Form expressly requires. These forms do not conflict,
and do not create an ambiguity. The plan unambiguously requires late entrants like
Khairi to submit evidence of insurability satisfactory to Prudential. Because Prudential's
denial of benefits comports with the unambiguous plan language, is neither arbitrary nor
capricious. *Moon*, 405 F.3d at 379. Even if the language were ambiguous, Prudential's
construction is at least as credible as Plaintiff's. Because *contra proferentum* does not
apply, Prudential's construction is a "reasoned explanation" supported by the record for
the denial and the denial is not arbitrary or capricious. *Id.*

### 2. Estoppel

For Plaintiff to prevail on an estoppel theory in an ERISA benefit action: (1) there
must be conduct or language amounting to a representation of material fact; (2) the

12

party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment. *Moore v. Lafeyette Life Ins. Co.*, 458 F.3d 416, 428-29 (6th Cir. 2006).

Plaintiff may be correct that estoppel claims are not claims for the denial of benefits and, therefore, are addressed in the first instance in the district court, requiring no deference to an administrator's action or decision. *Id.* at 427. Plaintiff raises this argument for the first time in its Reply brief (Dkt. # 36, Pg. ID 522) and has already stipulated, without reservation, that the arbitrary and capricious standard governs. (Dkt. # 30.) Ordinarily, the court does not entertain an argument first made in a reply brief. *Osborne*, 465 F.3d at 301. Regardless, Plaintiff's estoppel claim fails under either standard, for the reasons provided below.

Generally, "[p]laintiffs cannot recover under an estoppel theory for misrepresentations that contradict unambiguous, written plan terms because their reliance on the subsequent representation would be unreasonable." *Id.* At 429 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 402 (6th Cir. 1998). Because the relevant plan language is unambiguous, the general rule would defeat Plaintiff's estoppel theory. Recognizing this, Plaintiff asks the court to depart from the general rule as the Sixth Circuit did in *Bloemker v. Lahborers' Local 265 Pension Fund*, 605 F.3d 436, 444 (6th Cir. 2010).

13

The plaintiff in *Bloemker* had taken early retirement in reliance on the defendant's written certification that he would receive $2,339.47 per month until his death. *Id.* at 439. A year and a half later, the plaintiff received a letter informing him that a "computer programming error" caused his benefits to be incorrectly calculated, that his payments would decrease to $1,829.71 per month, and demanding that he repay the $11,215.16 excess that he had already received. *Id.* Although the plan terms were unambiguous, the plaintiff could not have calculated what his actual monthly entitlement was because the calculations involved were complex and the plaintiff could not know what actuarial assumptions were being made. *Id.* at 443. Notwithstanding the general rule, the Sixth Circuit held:

> [A] plaintiff can invoke equitable estoppel in the case of unambiguous pension plan provisions where the plaintiff can demonstrate the traditional elements of estoppel, including that the defendant engaged in intended deception or such gross negligence as to amount to constructive fraud, plus (1) a written representation; (2) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel.

*Id.* at 444.

Plaintiff does not argue that her case satisfies the additional *Bloemker* factors. Rather, she asks this court to carve out another exception from the general rule. (Dkt. # 36, Pg. ID 525.) The court declines to do so for the reasons that follow.

First, Plaintiff has not demonstrated the traditional elements of estoppel, because Plaintiff has not adequately shown detrimental reliance. Plaintiff points to nothing in the record to show that the Khairi was actually discouraged from obtaining other life insurance, or that he could have. The record shows that Khairi sought the optional term

14

life insurance at issue less than a month before his death, and that he knew he would be required to disclose his health issues. Based on that information, it would have been reasonable for the claim administrator to conclude that Khairi could not have furnished evidence of insurability satisfactory to Prudential or any other insurer, and thus Khairi and Plaintiff did not forego an opportunity for coverage in reliance on Shelby's mistaken withholding. *Cf. O'Connor v. Provident Life and Acc. Co.*, 455 F. Supp.2d 670, 680 (E.D. Mich. 2006) (Lawson, J.) (denying equitable estoppel where employer mistakenly withheld premiums for additional coverage for which plaintiff was ineligible). Such a result is neither arbitrary nor capricious. *Id.*

In any event, the present case does not present the "extraordinary circumstances in which the balance of equities strongly favors the application of estoppel" seen in *Bloemker*, 605 F.3d at 444. The plaintiff in *Bloemker* made a life-altering decision based on a specific, written representation certifying a certain entitlement, the plaintiff had no real reason to doubt that representation, and the plan administrator demanded a remittence of over $11,000. *Id.* In contrast, Shelby mistakenly withheld $37.92 from Khairi's paycheck over four weeks. (Dkt. # 32, Pg. ID 413.) Withholding, then promptly refunding, $37 in no way resembles demanding over $11,0000 from a retiree. While the *Bloemker* plaintiff had no real reason to doubt the early estimates of his pension benefits, Khairi was still submitting forms that expressly stated coverage would not begin until Prudential found the evidence of insurability satisfactory after the first two withholdings. (*Id.* at Pg. ID 275.) Finally, because it is not at all clear from the record that Khairi would have been able to obtain insurance elsewhere, his reliance on the mistaken withholdings did not clearly render Plaintiff worse off, unlike the *Bloemker*

15

plaintiff's early retirement. The circumstances here are unlike those in *Bloemker*, and do not justify a *Bloemker*-like departure from the general rule barring equitable estoppel in the face of unambiguous plan language. Under either standard of review, and whether or not the plan language is ambiguous, Plaintiff is not entitled to equitable estoppel.

### 3. Attorneys' Fees

Section 1132(g)(1) empowers the court to award reasonable attorneys' fees to either party in an ERISA action. 29 U.S.C. § 1132(g). The court must consider five factors: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions. *Secretary of Dept. Of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985). The record does not establish that Defendants acted in bad faith, that Plaintiff sought to confer a common benefit on plan participants, or that Plaintiff is seeking to resolve significant legal questions. The relative merits of the parties' positions do not favor Plaintiff, for all of the above reasons that this court is granting summary judgment to both Defendants. Neither the possible deterrent effects nor the Defendants' ability to pay weigh strongly in favor of a fee award. For these reasons, the court declines to award attorneys' fees to Plaintiff.

### IV. CONCLUSION

16

For the foregoing reasons, IT IS ORDERED that Defendants' Motions for Judgment (Dkt. ## 33, 35) are GRANTED. Plaintiff's Motion for Judgment (Dkt. # 32) is DENIED. A separate judgment will issue.


　　　　　　　　　　　　　　　　　/s/ Robert H. Cleland
　　　　　　　　　　　　　　　　ROBERT H. CLELAND
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

Dated:  September 14, 2016



I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 14, 2016, by electronic and/or ordinary mail.

　　　　　　　　　　　　　　　　 s/Lisa Wagner
　　　　　　　　　　　　　　　　Case Manager and Deputy Clerk
　　　　　　　　　　　　　　　　(313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\14-13691.ALQUAHWAGI.Summary.Judgment.tlh2.wpd